IN THE SUPREME COURT OF TEXAS








IN THE SUPREME COURT OF 
TEXAS
 
════════════
No. 
01-0619
════════════
 
Texas 
Department of Parks and Wildlife, 
Petitioner,
 
v.
 
Maria 
Miranda and 
Ray Miranda, 
Respondents
 
════════════════════════════════════════════════════
On Petition for Review from 
the
Court of Appeals for the 
Fourth District of Texas
════════════════════════════════════════════════════
 
 
Argued October 30, 2002
 
 
Justice Brister, 
joined by Justice O=Neill and justice Schneider, 
dissenting.       
The 
Legislature has provided that state park visitors are owed the same duty of care 
as trespassers;[1] 
thus, the plaintiffs in this case had to prove the Parks and Wildlife Department 
caused deliberate, wilful, or malicious injury.[2]  All members of the Court agree that 
either their petition or their summary judgment evidence fails to do so, though 
we disagree which.
The 
Mirandas alleged Maria suffered severe injuries caused 
by the Department=s 
gross negligence; specifically, they alleged the Department knew tree limbs 
could fall, and failed to warn them of that fact or assign them a campsite where 
none would.  I have grave doubts 
whether such facts could possibly constitute gross negligence C 
natural conditions usually cannot be unreasonably dangerous (much less 
wanton),[3] 
and trespassers do not have to be warned of what everyone should know.[4]  Nor does the Parks Department appear to 
have a duty to provide campsites safely away from trees;[5] 
indeed, one has to ask whether anyone would want to use such Aparks@ 
if it did.[6]
Faced 
with what appears to be an insupportable allegation like the gross-negligence 
pleading here, litigants normally have two options: (1) 
demand more specific facts by special exception, or (2) demand more specific 
facts by motion for summary judgment.  
Instead, the Department filed three motions, including a Aplea 
to the jurisdiction@ 
C  the white elephant[7] 
of current Texas motion practice.  
By use of this plea, the Department was able to force the trial judge 
(and ultimately this Court) to make an ad hoc decision whether our jurisdiction 
should be determined by reference to pleadings or evidence.  Because it should be litigants rather 
than judges making that choice, I respectfully dissent.
Pleas 
to the jurisdiction are nothing new.  
In his Commentaries on the Laws of England, Blackstone lists them 
as a category of dilatory pleas that (along with pleas of disability and 
abatement) deny the propriety of the remedy rather than the injury.[8]  One hundred years ago, this Court 
addressed a variety of matters as pleas to the jurisdiction, including 
objections based on personal jurisdiction,[9] 
subject-matter jurisdiction,[10] 
dominant jurisdiction,[11] 
venue,[12] 
capacity,[13] 
and conflict of laws.[14]
Since 
then, there has been a steady shift away from the common-law forms of pleading 
to the more specific motion practice set out in the rules of civil 
procedure.  For example, a defendant 
objecting to venue today must file a motion to transfer that complies with the 
form requirements of Rule 86 and the deadlines of Rule 87.[15]  Similarly, a nonresident objecting to 
personal jurisdiction must file a special appearance that meets the requirements 
of Rule 120a.[16]  In substance, these motions could still 
be categorized as Apleas 
to the jurisdiction;@ 
but in form, they must comply with the current rules of civil procedure.
Case 
law as well as rule amendments have contributed to the trend away from the 
common-law plea to the jurisdiction.  
For example, we have held that a complaint based on dominant jurisdiction 
in another court must be raised by plea in abatement in the second court, or it 
is waived.[17]  Again, though this complaint could be 
characterized as a plea to the jurisdiction, a more specific motion and 
procedure has rendered the common-law term obsolete.
But 
pleas to the jurisdiction have enjoyed a recent resurgence in the field of 
governmental immunity.  For many 
years, governmental units were not very particular about the vehicle for 
asserting immunity, raising it sometimes by C
$          
general demurrer;[18]
$          
special demurrer;[19]
$          
special exception;[20]
$          
plea to the jurisdiction;[21]
$          
plea in abatement;[22] 
or
$          
summary judgment.[23] 

 
In 
1997, the Legislature amended the Civil Practices and Remedies Code to allow 
interlocutory appeals Afrom 
an interlocutory order . . . [that] grants or denies a plea to the jurisdiction 
by a governmental unit.@[24]  We have held this section must be 
strictly construed, as it is an exception to the general rule that interlocutory 
orders are not appealable.[25]  
As 
a result, almost overnight a Aplea 
to the jurisdiction@ 
became the motion of choice for asserting immunity;[26] 
indeed, some appellate courts have refused to consider any other.[27]  This development exalts form over 
substance.  For example, before the 
Legislature=s 
amendment, one governmental entity unsuccessfully asserted immunity by means of 
a summary judgment and special exceptions; immediately after the effective date, 
the entity filed the same objection as a Aplea 
to jurisdiction@ 
B 
and prevailed.[28]
For 
several reasons, we should put a stop to this resurgence of common-law pleadings 
in immunity cases.  First, it is 
fraught with uncertainty.  Despite 
hundreds of haphazardly-numbered rules, only once do the Texas Rules of Civil 
Procedure mention pleas to the jurisdiction, and then only in a rule regarding 
permissible parts of an answer rather than permissible motions.[29]  There is no rule C 
no case and no code C 
that specifies the form, deadlines, or evidentiary requirements for pleas to the 
jurisdiction generally.  
In 
Bland Independent School District v. Blue,[30] 
we attempted to bring some order to this resurgence by setting guidelines for 
handling such pleas.  But due to the 
broad range of issues a plea to the jurisdiction might address, that was not 
easy to do.  As we pointed out in 
several examples, consideration of some pleas should not go beyond the 
pleadings, but consideration of others must.[31]  When necessary, trial courts must 
consider evidence relating to the jurisdictional facts, but should not consider 
evidence relating to the merits,[32] 
even though the two are sometimes the same.  Nor could we be specific about when 
pleas should be decided, leaving it to the trial court's discretion whether to 
address the issue at a preliminary hearing or after fuller development of the 
merits.[33]  
The 
examples given in Bland certainly provided more procedural guidance than 
existed before.  But without 
considering all possible pleas to the jurisdiction, we could not prescribe more 
definitive rules; until all those disputes come before us, we should probably 
not try.  In the meantime, it will 
often be unclear what the trial court should consider, or when it 
should do so, until the plea is decided (or perhaps even later on appeal).  To some observers, this may appear to be 
drawing up the rules after the game has been played.[34]
From 
almost any vantage point, the resurgence of pleas to the jurisdiction creates 
problems in immunity cases.  For 
governmental entities, it results in unnecessary repetition.  In this case, the Parks and Wildlife 
Department could not be sure whether the trial court would consider evidence 
necessary, so it filed three motions C 
a no-evidence motion for summary judgment, a traditional motion for summary 
judgment, and a plea to the jurisdiction.  
But as counsel for the Department admitted at the hearing, Aall 
three relate to the same set of issues.@  
Such 
repetition is unnecessary for interlocutory review.  Nothing in the Civil Practice and 
Remedies Code suggests the Legislature intended to specify a form motions 
had to take for that purpose, rather than their substance.  Indeed, the opposite is suggested by the 
Legislature=s 
selection of a common-law term applicable to a broad category of motions, rather 
than a term pointing to any particular motion in the current rules of civil 
procedure.  It has long been our 
practice to consider the substance of motions rather than their form;[35] 
nothing in the legislative history suggests the interlocutory appeal statute was 
intended to be an exception to that rule.
For 
plaintiffs, the problems created by the resurgence of pleas to the jurisdiction 
are even more acute.  Defendants 
uncertain about how to present an immunity defense can simply try a little of 
everything; plaintiffs, by contrast, may lose their case if they guess 
wrong.  In this case, for example, 
the Mirandas did not attach any evidence to their 
responses to the various motions.  
The lower courts agreed they did not need to, but if we hold otherwise, 
then the Mirandas will learn three years too late that 
they should have presented evidence at the jurisdictional hearing.
From 
a trial judge=s 
vantage point, pleas to the jurisdiction create uncertainty, not just about the 
rules to be applied but about the role of the judge.  This case is one of many in which 
immunity from suit under the Texas Tort Claims Act is coextensive with immunity 
from liability.[36]  As a result, deciding the jurisdictional 
question bears a strong resemblance to deciding the merits.  
In 
these circumstances, it is difficult for Texas judges to detect the line between 
jurisdictional questions they must decide before going further and 
liability questions they cannot decide without usurping the function of 
the jury.  Here, the Mirandas convinced the lower courts that whether their 
pleadings were supported by any evidence was a question solely for the 
jury.  But that is not true if they 
raised no material facts that could establish a waiver of immunity.[37]
By 
contrast, returning to standard motions as the vehicles for asserting 
governmental immunity would clarify what the jurisdictional hearing will be like 
and simplify many procedural questions.  For decades, governmental units have 
asserted immunity by special exceptions[38] 
or motions for summary judgment.[39]  In many cases (including this one), they 
still do so today.[40]  Relying on standard procedural motions 
would eliminate many questions about deadlines, forms, and evidence.  It would make government entities rather 
than trial judges decide whether the jurisdictional challenge is directed to the 
plaintiff=s 
pleadings or the underlying facts.  
If a governmental unit chooses wrong,[41] 
it may always try again.  But the 
plaintiff is not required to guess what rules or procedures the trial judge 
might apply.
Returning 
to pre-resurgence practice would not change the incidence of governmental 
immunity.  As we recently held, if a 
plea to the jurisdiction is directed only to the plaintiff=s 
pleadings, we construe them in the plaintiff's favor and allow an opportunity to 
amend unless they affirmatively negate jurisdiction.[42]  This is, of course, identical to the 
rules governing special exceptions.[43]  And when governmental entities wish to 
rely on evidence, any questions of fact that affect jurisdictional issues must 
be settled by the jury,[44] 
the same standard that applies to summary judgments.
Nor 
can it be argued that courts exceed their jurisdiction by requiring immunity 
pleas to be brought in standard motions according to settled rules of 
procedure.  As we stated shortly 
after the rules of civil procedure were enacted:
 
Since 
[the trial court] had the power to sustain the demurrers and grant the motions, 
it had the power to overrule them.  
The jurisdiction of a court must be determined, not upon the court's 
action in deciding the questions presented in a case, but upon the character of 
the case itself.  Jurisdiction is 
the power to decide, and not merely the power to decide correctly.[45]
 
Of 
course, returning to established procedural motions will not remove all 
difficulties with issues of governmental immunity.  Judges of goodwill and intellect will 
still disagree about whether a particular pleading is sufficiently specific, as 
Justices Jefferson and Wainwright do here.  Governmental units may incur unnecessary 
discovery costs and delays unless judges agree to hear summary judgment motions 
on jurisdictional matters as early in the case as they might hear a plea to the 
jurisdiction.  And appellate courts 
must still distinguish between immunity from suit (as to which an interlocutory 
appeal will lie) and immunity from liability (as to which it will not).[46]  But simplification of our procedures 
should not be rejected because we cannot simplify everything.
If 
the Texas Legislature mandated interlocutory review of Apleas 
in bar asserting limitations@ 
(a development devoutly to be wished against), few would suggest such review was 
available only for motions entitled APlea 
in Bar@ 
instead of the summary judgment or special exception forms that have long been 
used to raise such issues.[47]  We should stop making the assumption 
that the Legislature intended something different for pleas of governmental 
immunity.
Accordingly, 
I would reverse and remand for (1) the Parks and Wildlife Department to specify 
whether its plea to the jurisdiction is a challenge to the pleadings (by special 
exception) or the evidence (by summary judgment), (2) the Mirandas to respond in compliance with the rules  of civil 
procedure, and (3) the lower courts to address the governmental immunity issue 
in accordance with the usual rules governing disposition and review of those 
motions.
 
 

                                                                                                                                    
Scott Brister
                                                                                                                                    
Justice
 
OPINION 
DELIVERED:  April 2, 2004




[1] 
Tex. Civ. Prac. & Rem. Code '' 
75.002(c)(2), 75.003(g).

[2] 
Id. '' 
75.002(a)(2), 75.003, 101.022, 101.058.

[3] 
See Johnson County Sheriff's Posse, Inc. v. Endsley, 926 S.W.2d 284, 287 (Tex. 1996) (holding rock 
in dirt arena did not create unreasonably dangerous condition).

[4] 
Cf. County of Cameron v. Brown, 80 S.W.3d 549, 558 (Tex. 2002) (holding 
darkness caused by failed streetlights was not open and obvious hazard 
precluding recovery by licensee because it could not be seen from entrance to 
causeway).

[5] 
See Tex. Civ. Prac. & Rem. Code ' 
75.002(c)(1) (providing landowners who grant permission 
for recreational use do not assure that the premises are safe for that 
purpose).

[6] 
See Tex. Home Mgmt., Inc. v. Peavy, 89 S.W.3d 
30, 33 (Tex. 2002) (holding question of legal duty is question of law requiring 
balance of factors such as risk, utility, consequences of the duty, and other 
relevant individual and social interests).   

[7] 
The Oxford English Dictionary 
(1989) defines Awhite 
elephant@ 
as:
 
a.  A rare albino 
variety of elephant which is highly venerated in some Asian countries.  b.  fig.  A burdensome or costly possession (from 
the story that the kings of Siam were accustomed to make a present of one of 
these animals to courtiers who had rendered themselves obnoxious, in order to 
ruin the recipient by the cost of its maintenance).  Also, an object, scheme, etc., 
considered to be without use or value.

[8] 
3 William Blackstone, 
Commentaries on the Laws of 
England 301-03 
(1768).

[9] 
See, e.g., Rice v. Peteet, 1 S.W. 657, 657 
(Tex. 
1886).

[10] 
See, e.g., McIlhenny Co. v. 
Todd, 9 S.W. 445, 446 (Tex. 1888) (objecting that amount at issue fell below 
court=s 
jurisdictional limits); Juneman v. Franklin, 3 
S.W. 562, 562 (Tex. 1887) (objecting that forcible entry and detainer action was not filed in justice court).

[11] 
See, e.g., Cleveland v. Ward, 285 S.W. 1063, 1072 
(Tex. 1926), 
disapproved on other grounds, Walker v. Packer, 827 S.W.2d 833, 
842 (Tex. 1992); Grathaus v. Witte, 11 S.W. 1032, 1032 
(Tex. 
1888).

[12] 
See, e.g., Pecos & N.T. Ry. Co. v. Thompson, 167 
S.W. 801, 801 (Tex. 1914); 
Baines v. Jemison, 23 S.W. 639, 640 (Tex. 1893); 
Watson v. Baker, 2 S.W. 375, 375-76 (Tex. 
1886).

[13] 
See, e.g., Brown v. Gay, 13 S.W. 472, 472-73 
(Tex. 
1890).

[14] 
See, e.g., Tex. & P. Ry. 
Co. v. Richards, 4 S.W. 627, 629 
(Tex. 1887). 


[15] 
Tex. R. Civ. Proc. 86 (requiring unverified motion 
that is filed first and states counties of improper, proper, or mandatory 
venue); Tex. R. Civ. Proc. 87 (requiring 45-days= 
notice of hearing, 30-days= 
notice of respondent=s 
affidavits, and 7-days= 
notice of movant=s 
affidavits).

[16] 
Tex. R. Civ. Proc. 120a (requiring sworn motion 
that is filed and heard before any other matter, with affidavits served seven 
days before the hearing).

[17] 
Mower v. Boyer, 811 S.W.2d 560, 563 n.2 
(Tex 1991); Wyatt 
v. Shaw Plumbing Co., 760 S.W.2d 245, 247 
(Tex. 
1988).

[18] 
See, e.g., State v. Hale, 146 S.W.2d 731, 
735 (Tex. 1941); 
Herring v. Houston 
Nat=l 
Exch. Bank, 253 S.W. 813, 814 (Tex. 1923); 
Stephens v. Tex. & P. Ry. Co., 97 S.W. 309, 
310 (Tex. 1906); 
Thomson v. Baker, 38 S.W. 21, 22 (Tex. 
1896).

[19] 
See, e.g., Thomson, 38 
S.W. at 22.

[20] 
See, e.g., Duhart v. State, 
610 S.W.2d 740, 741 (Tex. 1980); Dir. of Dep=t 
of Agric. & Env=t 
v. Printing Indus. Ass'n of Tex., 600 S.W.2d 264, 
265 (Tex. 1980); Stephens, 97 S.W. at 310.

[21] 
See, e.g., Fed. Sign v. Tex. S. Univ., 951 S.W.2d 401, 403 
(Tex. 1997), 
superseded by statute on other grounds as stated in Gen. Servs. Comm'n v. 
Little-Tex Insulation Co., Inc., 39 S.W.3d 591, 593 (Tex. 2001); Lowe v. 
Tex. Tech Univ., 540 S.W.2d 297, 298 (Tex. 1976); State v. Lain, 349 
S.W.2d 579, 580 (Tex. 1961); Griffin v. Hawn, 341 S.W.2d 151, 152 (Tex. 
1960); Short v. W. T. Carter & Bro., 126 S.W.2d 953, 955 (Tex. 
1938).

[22] 
See, e.g., Duhart v. State, 610 S.W.2d 740, 741 
(Tex. 1980); 
Lowe, 540 S.W.2d at 298; Griffin v. Hawn, 341 S.W.2d 151, 152 
(Tex. 1960); W. 
D. Haden Co. v. Dodgen, 308 S.W.2d 838, 838 
(Tex. 1958); Cobb 
v. Harrington, 190 S.W.2d 709, 710 (Tex. 1945); 
Short v. W. T. Carter & Bro., 126 S.W.2d 953, 955 
(Tex. 
1938).

[23] 
See, e.g., Overton Mem=l 
Hosp. v. McGuire, 518 S.W.2d 528, 528 (Tex. 1975) (per 
curiam); Tex. Dept. of Corr. v. Herring, 513 S.W.2d 6, 7 
(Tex. 
1974).

[24] 
Tex. Civ. Prac. & Rem. Code ' 
51.014(a)(8). 

[25] 
Bally Total Fitness Corp. v. 
Jackson, 53 
S.W.3d 352, 355 (Tex. 
2001).

[26] 
See, e.g., Texas Natural Res. Conservation Comm'n v. IT-Davy, 74 S.W.3d 849, 852 (Tex. 2002); 
Little-Tex Insulation Co., Inc., 39 S.W.3d at 594; McClain v. Univ. of 
Tex. Health Ctr. at Tyler, 119 S.W.3d 4, 5 (Tex. App.CTyler 
2000, pet. denied); Dallas County Cmty. Coll. Dist. 
v. Bolton, 990 S.W.2d 465, 466 (Tex. App.CDallas 
1999, no pet.); Alamo Cmty. Coll. Dist. v. Obayashi Corp., 980 S.W.2d 745, 746 
(Tex. App.CSan 
Antonio 1998, pet. denied); Tex. Parks & Wildlife Dep=t 
v. Garrett Place, Inc., 972 S.W.2d 140, 142 (Tex. App.CDallas 
1998, no pet.); Tex. Parks & Wildlife Dep=t 
v. Callaway, 971 S.W.2d 145, 147 (Tex. App.CAustin 
1998, no pet.).

[27] 
See, e.g., Thomas v. Long, 97 S.W.3d 300, 302-03 (Tex. 
App.CHouston 
[14th  Dist.] 2003, pet. granted) 
(refusing interlocutory appeal of denial of summary judgment based on lack of 
subject matter jurisdiction as no order granted or denied a plea to the 
jurisdiction); Baylor Coll. of Med. v. Tate, 77 S.W.3d 467, 472 (Tex. 
App.CHouston 
[1st Dist.] 2002, no pet.) (refusing interlocutory 
appeal because trial court=s 
order was summary judgment based on immunity from liability rather than plea to 
the jurisdiction based on immunity from suit).

[28] 
Lamar Univ. v. Doe, 971 S.W.2d 191, 193 (Tex. App.CBeaumont 
1998, no pet.).

[29] 
Tex. R. Civ. Proc. 85:
 
The 
original answer may consist of motions to transfer venue, pleas to the 
jurisdiction, in abatement, or any other dilatory pleas; of special 
exceptions, of general denial, and any defense by way of avoidance or estoppel, and it may present a cross-action, which to that 
extent will place defendant in the attitude of a plaintiff.  Matters in avoidance and estoppel may be stated together, or in several special 
pleas, each presenting a distinct defense, and numbered so as to admit of 
separate issues to be formed on them.  

 
(Emphasis 
added).

[30] 
34 S.W.3d 547 (Tex. 
2000).

[31] 
Id. at 
555.

[32] 
Id.

[33] 
Id. at 
554.

[34] 
See id. at 555 (rejecting plaintiffs= 
demand for remand for full evidentiary hearing because they did not contest 
evidence at original plea to the jurisdiction hearing).

[35] 
See, e.g., Speer v. Stover, 685 S.W.2d 22, 23 (Tex. 1985) 
(per curiam) (considering plea to jurisdiction even 
though misnamed plea in abatement); see also Tex. R. Civ. Proc. 71 (stating A[w]hen 
a party has mistakenly designated any plea or pleading, the court, if justice so 
requires, shall treat the plea or pleading as if it had been properly 
designated@).  Some courts themselves appear to use the 
possible terms for immunity motions interchangeably.  See, e.g., State v. Executive 
Condos., Inc., 673 S.W.2d 330, 331-32 (Tex. App.CCorpus 
Christi 1984, writ refused n.r.e.) (referring to immunity motion as Aplea 
to the jurisdiction@ 
when it was filed, Aplea 
in abatement@ 
when it was denied, and Amotion 
to dismiss@ 
when it was reversed).

[36] 
See Tex. Civ. Prac. & Rem. Code ' 
101.025(a) (waiving immunity to suit to the extent of liability under chapter 
101), ' 
101.021 (creating governmental liability for specified acts resulting from 
negligence, premises conditions, and use of property to the extent private 
persons would be liable).

[37] 
See Tex. R. 
Civ. Proc. 
166a(c).

[38] 
See, e.g., John G. & Marie Stella Kenedy Mem=l 
Found. v. Mauro, 921 S.W.2d 278, 281 (Tex. App.CCorpus 
Christi 1995, writ denied);  Tex. 
Dep=t 
of Corr. v. Winters, 765 S.W.2d 531, 532 (Tex. 
App.CBeaumont 
1989, writ denied); Martine v. Bd. of Regents, State Senior Colleges of 
Tex., 578 S.W.2d 465, 469 (Tex. Civ. App.CTyler 
1979, no writ); Harrison v. Bunnell, 420 S.W.2d 
777, 778 (Tex. Civ. App.CAustin 
1967, no writ); State v. McDonald, 220 S.W.2d 732, 732 (Tex. Civ. App.CTexarkana 
1949, writ refused); Porter v. Langley, 155 S.W. 1042, 1043 (Tex. Civ. App.CDallas 
1913, writ refused).

[39] 
See, e.g., Ho v. Univ. of Tex. at Arlington, 984 S.W.2d 672, 
681-83 (Tex. App.CAmarillo 
1998, pet. denied); Russell v. 
Tex. Dep=t 
of Human Res., 746 S.W.2d 510, 513 (Tex. App.CTexarkana 
1988, writ denied); Gay v. State, 730 S.W.2d 154, 159 (Tex. App.CAmarillo 
1987, no writ).

[40] 
See, e.g., Dallas Area Rapid Transit v. Whitley, 104 
S.W.3d 540, 542 (Tex. 2003) 
(sovereign immunity asserted by plea to the jurisdiction and motion for summary 
judgment); County of Cameron v. Brown, 80 S.W.3d 549, 553 
(Tex. 2002)  (sovereign immunity asserted by 
plea to the jurisdiction and special exceptions).

[41] 
See, e.g., Tex. Dep=t 
of Corr. v. Herring, 513 S.W.2d 6, 9-10 (Tex. 
1974) (reversing summary judgment based on immunity as plaintiff was not allowed 
opportunity to replead).

[42] 
Cameron, 80 S.W.3d at 555; 
Tex. 
Dep=t 
of Transp. v. Ramirez, 74 S.W.3d 864, 867 
(Tex. 
2002).

[43] 
See Brown, 80 S.W.3d at 559; Herring, 513 S.W.2d at 
9-10.

[44] 
See, e.g., Brown, 80 S.W.3d at 556 (holding foreseeability issue raised by plea to the jurisdiction 
presented fact question for jury).

[45] 
Martin v. Sheppard, 201 
S.W.2d 810, 812-13 (Tex. 
1947).

[46] 
See Tex. Dep=t 
of Transp. v. Jones, 8 S.W.3d 
636, 638-39 (Tex. 
1999).

[47] 
See Baker v. Monsanto Co., 111 S.W.3d 158, 159 (Tex. 2003) (per 
curiam) (asserting limitations by summary judgment); 
City of Port Arthur v. Tillman, 398 S.W.2d 750, 751 (Tex. 1965) 
(asserting limitations by special exception).